6993

### LANFORD v. DRUMMOND.

COUPON BONDS—SCHOOL DISTRICT—MANDAMUS.—Whether the trustees of a school district which has voted an issue of bonds for building a schoolhouse shall lithograph them before sale is negotiated at par is discretionary with them, and this Court will not issue a mandamus to compel two of the trustees to furnish their signatures to be lithographed on the coupons until such sale is provided for.

MR. JUSTICE GARY *construes the act authorizing school districts to issue bonds to leave the amount to be issued discretionary with the trustees.*

Petition in the original jurisdiction of this Court by J. W. Lanford, as one of the trustees of Lanford School District, and T. R. DeShields, J. M. DeShields, O. L. Lanford and C. L. Waldrop, resident taxpayers of said district, for writ of mandamus against W. H. Drummond and W. G. Patterson, as trustees of said district.

*Mr. F. P. McGowan,* for petitioners.

STATEMENT OF THE PETITION AND RETURN.

This is a proceeding in the original jurisdiction of this Court, whereby the petitioners instituted proceedings to secure a writ of mandamus against the respondents upon the following facts:

That Lanford School District, No. 10, in Laurens county is composed of twelve and a half square miles, and by an act of the Legislature, approved March 9, 1896, the same was made a body politic and corporate for school purposes, and under an act of the Legislature, approved February 19, 1907, the public school districts were authorized and empowered to issue and sell coupon bonds of said school districts for school purposes.

That in accordance with said act of the Legislature entitled, "An act to provide for the issuing of bonds in public school districts in South Carolina," approved February 19, 1907, an election was held upon a written petition of more than one-third of the qualified resident electors of said

school district for the purpose of voting on the question of issuing and selling coupon bonds in the sum of $3,500, and a majority of the qualified electors voted in favor of said bonds.

That all the requirements of law have been strictly complied with. That J. W. Lanford and the respondents are the duly appointed trustees of said School District and T. R. DeShields, J. M. DeShields, O. L. Lanford and C. L. Waldrop are qualified electors and taxpayers of said district.

That the bonds are now ready, but the said trustees, W. H. Drummond and M. G. Patterson, refused, and still refuse, to sign their names on a card from which their signatures may be lithographed on the coupons, and state that they will refuse to sign the bonds when presented to them.

That J. W. Lanford, one of the trustees, has been and is now ready to sign and do all things necessary to the preparation and floating of said bonds, but by reason of the refusal of the trustees, W. H. Drummond and M. G. Patterson, to sign the cards, in accordance with the wish of the majority of the qualified electors, the will of the people will be thwarted.

That it was the intention of the people that the proceeds of said bonds should be used in the erection of a school building, ready for use by October 1, 1908.

The return of the respondents set forth:

That the board of trustees submitted to the duly qualified electors, at an election held therein, the question of issuing coupon bonds, in an amount not exceeding $3,500, and 17 votes were cast for bonds and 14 against bonds, being 31 in all, whereas 44 persons residing in said district are qualified to vote.

Under an act of the Legislature, approved February 19, 1907, the trustees of any school district were authorized to issue and sell coupon bonds at such times and in such amounts as they might deem necessary, and the trustees of said school district, not having sufficient funds on hand for

the purpose of erecting a new school building, determined to issue bonds for an amount not exceeding $3,500.

That owing to the excellent advantages of the surrounding schools, the respondents, as trustees, deem it unwise that bonds for a larger amount than $2,000 be sold.

That the petitioners herein, and some other residents near Lanford Station, are the only persons favoring the erection of a large and expensive school building.

That the respondents are ready and willing to take steps for the issuance and sale of bonds for an amount not exceeding $2,000.

Further, respondents show, that $3,500 is not in excess of four per centum of the assessed valuation of the property, but the respondents and others think that it would be $1,500 additional burden imposed on the taxpayers.

Further, the respondents show, and so allege, that they have been trying to sell said bonds, but have not found a purchaser therefor at par, as required by the act, and the respondents, as a majority of the trustees, have not authorized said bonds to be prepared.

The respondents are now, and always have been, willing to have bonds in the necessary amount engraved, and to furnish their signatures as soon as a sale can be negotiated.

August 8, 1908. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE, after the foregoing statement of facts. In *Abbeville County* v. *McMillan*, 52 S. C., 60, it was held: "That the act of a majority of a number of persons appointed by law to perform some public duty is the act of the whole." In the same case it is held: "Whether an officer has erred in the performance of a public duty in which he had discretion cannot be inquired into under proceedings in mandamus."

In *Moore* v. *Napier*, 64 S. C., 564, 42 S. E., 997, it was held: "That the Court, in its discretion, will refuse writ of mandamus when the effect of granting it would be to violate the intention of the act of the Legislature."

· There can be no question that a majority of the taxpayers residing in the bounds of Lanford School District have, by their votes, declared a willingness to issue bonds to the amount of $3,500. It is the duty of the three trustees of said school district to carry out the will of their constituency. A majority of such trustees can act validly and by their conduct bind their constituency, but let us see what the act of the Legislature requires.

At page 523 of the Acts of 1907, in "An act to provide for the issuing of bonds in public school districts of South Carolina," in section 4 of the said act, it is provided: "If a majority of the votes cast at such election be for the issuing of bonds, such trustees shall issue such bonds, which shall not run longer than twenty years from date of issue thereof, which shall be sold by such trustees at not less than par, and the proceeds of which shall be used by such trustees for the purpose of erecting buildings, etc."

As before remarked, a majority of these trustees could and should carry out the wish of the people; the very object of an election is that the majority of the voters may declare a policy which shall bind them, and also bind their officers, but these officers are invested by this act with discretionary powers as to details. It is left to them to say when the bonds fill the requirements of law, and, furthermore, when they are able to sell the bonds at par. They allege they have not been able to negotiate the sale of the bonds at par, and there is no evidence that they can. Whether the trustees shall have the bonds lithographed before having an agreement to sell them is a matter of detail upon which they may exercise their discretion. Had the petitioners shown that the whole issue of bonds could be sold at par, a very different case would have been presented.

In the case we first cited, in an opinion prepared by that eminent jurist, Chief Justice McIver, he made the declaration we quoted; and, in the second, the words of Mr. Justice Gary are very pertinent.

12—81

This Court would use wise discretion in declining to require an issue of bonds at variance with the act of the Legislature.

We, therefore, will not issue the mandamus prayed for, but will dismiss the petition.

MR. JUSTICE GARY, *concurring.* This is an application to the Court, in the exercise of its original jurisdiction, for a writ of mandamus, requiring the respondents to write their names on a card, for the purpose of having their signatures lithographed or engraved upon certain coupon bonds, to the amount of three thousand five hundred dollars, which the petitioners contend were authorized to be issued by the vote of a majority of the qualified electors of the school district in question, and to compel the said trustees to sign the bonds.

The respondents, in their return to the rule to show cause why the writ of mandamus should not issue, allege that "the trustees of the said school district, deeming it for the best interest of the school therein that a new school building be erected in said school district, for the accommodation of the school located at Lanford Station, and not having sufficient funds on hand for the purpose, determined to issue bonds to such amount as they might deem necessary for said purpose, and it was thought that an amount not exceeding thirty-five hundred dollars would be ample, though at the time said trustees did not know whether the full amount thereof would be necessary. * * *

"That they have always been ready and willing, and are now ready and willing, to take such steps for the issuance and sale of coupon bonds of the said district, to an amount not exceeding two thousand dollars, as may be necessary, but are not willing to issue and sell such bonds in an amount in excess of two thousand dollars, for the reasons herein stated, the same not being necessary for the best interests of such school district. * * *

"That no purchaser having yet been found for said bonds, respondents deem it inadvisable to go to the expense of

lithographing or engraving such bonds, when the chances would be that a purchaser therefor might not be obtained in a long time, and that when such purchaser was found objection might be raised to the manner in which such bonds were lithographed or engraved, and the district be thereby put to great and unnecessary expense."

The respondents are ready and willing to issue and sell bonds in an amount not exceeding two thousand dollars.

If bonds to the amount of thirty-five hundred dollars, in proper form, had been issued for the purpose of selling the same, and mandamus would not lie to compel the sale of bonds to that amount, then it will not lie to require the respondents to perform acts preparatory to the issuance of bonds in that sum.

The question whether it was the duty of the trustees to issue bonds to the amount of thirty-five hundred dollars depends upon the construction of the act entitled: "An act to provide for the issuing of bonds in public school districts in South Carolina," approved the 19th of February, 1907. Section 1 of that act provides: "That the trustees of any school district in the State of South Carolina are hereby authorized to issue and sell coupon bonds of the said school district, payable to bearer, in such denominations and amount as they may deem necessary, not to exceed four per cent. of the assessed valuation of the property of such school district, for taxation, and bearing a rate of interest not exceeding six per cent. per annum, payable annually or semi-annually, and at such times as they may deem best: *Provided,* That the question of issuing bonds authorized in this section shall be first submitted to the qualified voters of such school district, at an election to be held upon the written petition or request of at least one-third of the resident electors, and a like proportion of the resident freeholders of the age of twenty-one years, to determine whether said bonds shall be issued or not." * * *

The first part of section 1 confers upon the trustees full power to issue and sell bonds, in such denominations and

amount as they may deem necessary; and there is no limitation as to amount, except that it shall not exceed four per cent. of the assessed valuation of the property of the school district.

The written petition or request upon which the election is to be held is not required to state the amount of the bonds to be issued; and the proviso does not limit the power of the trustees, except in so far as it requires that the question of issuing the bonds "authorized in this section" shall be submitted to the qualified voters of the school district.

Unless there are provisions in other sections of the act limiting the discretionary power of the trustees, the petitioners are not entitled to the relief for which they pray, for there is not a single expression in this section which would seem to indicate that the trustees were to be controlled by the result of the election, further than as to *issuing* the bonds.

Section 2 provides for determining whether the bonds authorized by section 1 of the act shall be issued; but, again, there is a failure to provide that the amount of the bonds shall be determined by the result of the election.

In section 3 the requirement is that the ballot cast must have written or printed on it the words "For Bonds" or "Against Bonds;" but there is no indication that the amount of the bonds was to be submitted to the voters.

Section 4 shows that the act had in contemplation the issuing of bonds, but not the amount thereof.

Section 5 is as follows: "All bonds issued under and in pursuance of this act shall be signed by the trustees of such school district: *Provided,* That the signatures of such trustees shall be lithographed or engraved upon the coupons attached to such bonds; and such lithographed or engraved signatures shall be sufficient signing thereof."

Neither this, nor any of the remaining sections, contain provisions manifesting an intention on the part of the Legislature that the amount of the bonds was dependent upon the result of the election.

For these reasons I concur in the opinion of Mr. Chief Justice Pope.

MR. JUSTICE JONES *dissents because mandamus should issue, as the act sought to be compelled is purely ministerial.*